PEDRO A. COLLAZO, Plaintiff and Appellee, *v.* SECRETARY OF THE TREASURY, Respondent and Appellant.

No. 11697.   Submitted April 3, 1959.—Decided May 17, 1961.

---

*José Trías Monge, Secretary of Justice* and *Carlos N. Souf-front, Assistant Attorney General,* for appellant. *Francisco M. Susoni* for appellee.

MR. JUSTICE PÉREZ PIMENTEL delivered the opinion of the Court.

The Secretary of the Treasury notified Pedro A. Collazo of an income tax deficiency for the years 1944, 1947 and 1948 amounting to $7,044.39 which included, in addition to the taxes owed, the interest and penalties. The Secretary based his determination on the fact that the taxpayer had not stated in his return nor adequately identified the following incomes: year 1944, a loan of $12,000 made to José Madrazo; year 1947, another loan of $8,000 to the same José Madrazo and year 1948, a loan of $10,000 made to the "Valldejuli & Segarra" firm. Of this last item, the Secretary of the Treasury accepted during the investigation, as identified, the sum of $5,276.06, the balance of $4,723.91 remaining in controversy.

The taxpayer appealed before the Superior Court, San Juan Part, alleging in synthesis, that the incomes which the Secretary of the Treasury claims to be unidentified originated from savings and other nontaxable sources.

The complaint having been answered and the essential facts denied, a hearing was held on its merits on June 16, 1953. The Secretary of the Treasury had requested the plaintiff by means of a Sub-Poena Duces Tecum, to bring for said hearing the accounting books of the firm Valldejuli & Segarra, with whom the plaintiff had worked since 1924 to 1948. The books were not brought because as the plain-

tiff's counsel alleged and it was so held by the court, the request was made belatedly. They proceeded to hear the testimony of the plaintiff, Pedro A. Collazo. He was questioned by the parties and by the presiding Judge himself who stated that apparently the plaintiff could not have made with the money he earned from 1924 to 1948, the investments which he made for the years in controversy, that if he had to decide the case at that moment, the evidence presented by the taxpayer "has not destroyed sufficiently that presumption (referring to the presumption of correctness attached to the determination of the Secretary of the Treasury) to convince me that we ought to modify or set aside the Treasurer's finding." [1]

At the request of the parties the continuation of the trial was postponed so that evidence of all salaries, credits and bonuses that the plaintiff received from Valldejuli & Segarra could be brought.

The hearing was continued a year later. Only the books of the firm Valldejuli & Segarra corresponding to years 1941 to 1948 were brought to court alleging that the books of said commercial firm prior to the year 1941 had been misplaced. Plaintiff's counsel announced that for the past

---

[1] At the end of plaintiff's examination, the judge said the following:

"Q.—The court is going to tell you frankly. Up to now there is sort of a queer situation, things that do not ordinarily happen that way. I do not know whether you were handling another person's money in his name or whether other persons were actually doing the business in your name, but the truth is that if we were to decide the case right now, I believe your testimony is not very convincing to this court that things happened that way. I know there are people who have the habit of saving, who live thriftily, as economically as possible and try to increase their savings, but your testimony shows that you have been doing this thing during a long period of years, twenty years or more, you did not touch that money, did not make it yield, not even to live a little better and all of a sudden you appear doing great investments without any mortgage guarantee or anything.

"A.—It would be hard to prove, so, but it was actually so.

"Q.—As this hearing is going to continue, I would like to anticipate to my colleague that this is a case in which he has to show in a convincing

six days he had been working with Villarini and Collazo in the case; that he had obtained a tape recording of the testimony given with Collazo in the previous hearing; that they had been "checking year by year from the twenty-fourth until now. This entails in itself substantial differences in the testimony. Modifications in regard to some points and rectifications in regard to others." They proceeded then to the introduction of the evidence. Madrazo testified as to the loans that the plaintiff had granted him, the latter testified once more and also presented certain documentary evidence. The Secretary of the Treasury also presented documentary evidence.

Thereafter, the court made findings to the effect that the amounts in controversy had been duly identified and rendered judgment sustaining the complaint and setting aside the defects for the years 1944, 1947 and 1948.

■■ In this appeal the defendant contends that the trial court committed eight errors. The truth is that they all are directed to challenge different findings of fact made by said court. For that reason we shall not discuss separately each error, but we shall determine in general terms whether or not the judgment under review is correct.

---

way that he has received that money, so that the court may have grounds to know if he made such savings.

"Mr. Susoni:

"What we are going to show is that since 1924 until now he has received 'X' amount of money which is in . . .

"Hon. Judge:

"Apparently with your earnings from 1924 to 1948, he could not have made said investments.

"Mr. Susoni:

"But during 1924 there is a $500 bonus and after 1924, a person who lives the way he does and states what he has and has a bonus of only three hundred dollars until the year 1936 and of five hundred dollars or more and one thousand dollars in nineteen forty-four.

"Hon. Judge:

"That is what we want you to prove, the existence of those bonuses in a satisfactory manner." (Tr. Ev., pp. 42 to 43.)

The taxpayer Collazo testified that from 1936 to 1943 he had saved the $12,000 he lent to Madrazo in 1944. The evidence on his incomes and disbursements from the years 1936 to 1940 consisted exclusively of his own testimony. He testified that in 1936 he was appointed by the Mercantile Valldejuli & Segarra, manager of their office in Salinas on a weekly salary of $25 plus a bonus of 20% of the profits. With his salary he paid the family expenses (wife and five children) and also helped his mother and his three maternal brothers, under age. The bonus, he said, he saved completely, keeping the money in the office safe; that those bonuses were never less than $1,000 a year. He could not say, however, how much he had saved in 1936, nor could he state in detail his savings year by year, prior to 1941. When he was asked what grounds he had to state that he had received an average bonus of $1,000 during that period, he answered that it was on the basis that "simply he had that amount."

This taxpayer did not keep books, or records of the profits, nor, therefore, of the sum of 20% which he alleges corresponded to him from said profits. The books were kept in the main office of Valldejuli & Segarra in Ponce. The effort made by the defendant to have two books corresponding to the period from 1936 to 1940 brought to court, was in vain, because it was alleged that they had been misplaced. Arturo E. Valldejuli, partner of the mercantile Valldejuli & Segarra, was present at the trial, but he was not called to testify on the taxpayer's behalf. At the second hearing the taxpayer knew that he did not have said books. He made no effort to bring any additional evidence to prove his income until the year 1941.

However, this taxpayer filed his income tax return for the first time in the year 1944. In a sworn statement rendered by him before the Investigator of the Bureau of Income Tax Return he said he had not filed his income tax return prior to 1944 because his income did not exceed

$2,000 and for said reason he was not bound to file one. Between the testimony rendered the first time and the one he rendered the second time, a year later, there exists serious discrepancies on essential points. Even more, these contra-- dictions are noted between his direct and indirect testimonies.

The circumstances noted, without our having tried to point out all of them, leave the taxpayer's testimony devoid of any persuasive force.

An examination of the record as a whole gives the same impression that plaintiff's testimony at the second hearing in regard to his savings for the years 1936 to 1940, was insufficient to overcome the effect that his previous testimony had caused on the mind of the judge when the latter considered it. Really, the taxpayer's evidence—his oral testi-- mony—at the second hearing was not different, nor more reasonable or persuasive than the one he had given at the first hearing of the case. Tax assessments made by the Secretary of the Treasury are presumed to be correct. *Ma-- yagüez Sugar Co. v. Sancho, Treas.*, 64 P.R.R. 699; *Rossi v. Tax Court*, 66 P.R.R. 405; *A. Fernández Hermano & Co.. v. Tax Court*, 66 P.R.R. 570; *Corporación Azucarera v. Tax Court*, 69 P.R.R. 189; *Buscaglia, Treasurer v. Tax Court; Destilería Serrallés, Inc., Int.*, 70 P.R.R. 210; *Buscaglia,. Treas. v. Tax Court; Aguirre, Int.*, 70 P.R.R. 384; *García v. Sec. of the Treasury*, 76 P.R.R. 471; *Buscaglia, Treas.. v. Tax Court*, 70 P.R.R. 807; *González v. Tax Court*, 73 P.R.R. 24.

It is incumbent on the taxpayer to overcome said pre-- sumption with evidence—*Soto v. Sec. of the Treasury*, 78 P.R.R. 169; *González v. Tax Court, supra*—and said proof should consist of something more than mere generalities. The doctrine that the evidence must be clear, strong, authentic and convincing—*Buscaglia, Treas. v. Tax Court; Aguirre, Int., supra; García v. Sec. of the Treasury*, 76 P.R.R. 471; *Buscaglia, Treasurer v. Tax Court, supra; Corporación Azu--*

*carera* v. *Tax Court, supra*, has been reexamined recently by this Court in *Carrión* v. *Secretary of the Treasury*, 79 P.R.R. 350 and is expressed in terms to the effect that even though the evidence does not have to be extraordinarily persuasive and authentic or clear, strong and convincing, at least it should be within the degree and measure of persuasion required in all other civil cases.

Here, the taxpayer's evidence, in regard to the years 1936 to 1940, and for the reasons pointed out, does not fall within the *Carrión* case.

■ Let us now consider which part of the income of $12,000 in 1944, if any, was reasonably identified by the taxpayer.

His 1941 bonus, as revealed by the Valldejuli & Segarra books, was of $124. In January, 1944, said firm liquidated the bonuses for 1942, 1943 and 1944 and the three amounted to the sum of $3,194.48. Of this last amount the taxpayer invested $2,600 to buy a house, leaving a balance of $594.48, which when added to the bonus of $124 of 1941 makes a total of $718.40. This sum represented the income duly identified by the taxpayer in 1944. Therefore, the difference between the $12,000 lent to Madrazo in said year and the sum identified, leaves an undentified income of $11,281.52. In this respect the judgment of the trial court is erroneous and should be modified.

■ However, we consider that the taxpayer was able to identify the income of $8,000 in the year 1947 and of $10,000 in 1948. These incomes are from his savings.[2] The evidence shows that in the year 1944 he was able to save $1,772.18, in 1945, $5,330.81, in 1946, $3,653.35 and

---

[2] In 1944 the taxpayer had a weekly salary of $40 plus a yearly bonus, and also had other incomes of: in the year 1944 he earned a salary of $2,080 plus a bonus of $1,766.89 and the interests of a loan made to Madrazo, adding $720, plus $250 of rents from a property; in the year 1945 he earned a salary of $2,080, $3,672.87 of bonus, $300 from the rent of the house and $720 of interest on the loan;

in 1947, $4,151.31, that is, a total of $14,907.65 amount which is enough to leave as identified the income of $8,000 in 1947, and still leaves a remainder of $6,907.65.

In 1948 he was able to save $6,492.76 that added to the remainder of 1947 makes a total of $13,400.41, amount which is sufficient to leave as identified the loan of $10,000 he made to Valldejuli & Segarra in 1948.

For the foregoing reasons, the judgment rendered by the Superior Court, San Juan Part, shall be modified to the effect that the taxpayer had an unidentified income of $11,281.52 for the year 1944, and as modified it will be affirmed.

Mr. Justice Santana Becerra did not participate herein.

in 1946 he earned a salary of $2,080 and $3,384.76 of bonus, $757.59 of interest and $300 from the rent of the house; in 1947 he received $2,120 as salary, $2,826.33 of bonus, $820 of interest and $300 of rents; in 1948 he received $2,120 from salaries, $5,276.09 from bonus, $506.77 of interest and $300 in rents.